IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALICIA A. TUTT, § § *Plaintiff*, § § v. § § NANCY A. BERRYHILL, § COMMISSIONER OF THE § SOCIAL SECURITY ADMINISTRATION, § § *Defendant*. § | Civil Action No.: 4:17-CV-2520 |

## **MEMORANDUM AND ORDER**

Plaintiff Alicia A. Tutt filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for social security disability insurance benefits. Tutt and the Commissioner moved for summary judgment (Dkts. 7, 9). After considering the pleadings, the record, and the applicable law, the court **DENIES** Tutt's motion, **GRANTS** the Commissioner's motion, and **AFFIRMS** the final decision of the Commissioner.[1]

### **I. Background**

**1. Factual and Administrative History**

Tutt filed a claim for social security disability insurance benefits on July 14, 2014, alleging the onset of disability as of February 27, 2011, (later amended to February 22, 2013), due to a back injury, neck injury, arthritis, chest pains, high blood pressure, irritable bowel syndrome, and depression. Dkt. 4-4 at 28-29. Her claim was denied on initial review and reconsideration. The administrative law judge (ALJ) held a hearing on May 23, 2016, at which

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 13.

Tutt and a vocational expert, Byron Pettingill, testified. The ALJ issued an unfavorable decision on July 5, 2016. Dkt. 4-3 at 16-30. The Appeals Council denied review on June 30, 2017, Dkt. 4-3 at 2-4, and the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

2. **Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

"deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c).

Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Id.* This second step requires the claimant to make a *de minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1998).

**4. The ALJ's Decision**

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Tutt met the insured status requirements of the Social Security Act through December 31, 2016, and she did not engage in substantial gainful activity after February 22, 2013, her amended alleged onset date. The ALJ found that Tutt had the severe impairments of degenerative disc disease of the lumbar spine, irritable bowel syndrome, right carpal tunnel syndrome, polyneuropathy, migraines, seizure disorder, depressive disorder, and anxiety disorder, none of which met or equaled the severity of a listed impairment. Dkt. 4-3 at 18.

The ALJ further found that Tutt had the residual functional capacity to perform light work, with the additional limitations that she can "stand and walk 6 hours our of an 8-hour work day; can sit 6 hours out of an 8-hour work day; can lift and carry, push and pull, 20 pounds occasionally and 10 pounds frequently; can occasionally climb stairs, balance, stoop, kneel, crouch and crawl; can never use ladders, ropes, or scaffolds; must avoid even moderate exposure to all hazards; can perform detailed, not complex tasks; and can have frequent interaction with

the general public and coworkers." *Id.* at 21. The ALJ found Tutt could not perform any of her past relevant work, which was light, semi-skilled and medium, skilled. *Id.* at 28. Based on the testimony of a vocational expert in response to his hypothetical questions, the ALJ concluded that Tutt could perform other jobs that exist in significant numbers in the national economy, and thus was not disabled under the Act. *Id.* at 28-29.

## II. Analysis

Tutt contends the ALJ erred because he rejected the opinion of Meagan Houston, Ph.D., who performed a psychological consultative examination. Tutt also contends that the ALJ's RFC determination is not supported by substantial evidence because it is inconsistent with the opinions of state agency reviewing physicians and not supported by any medical source opinion. Finally, Tutt contends that the ALJ's conclusion at step 5 of the sequential analysis is inconsistent with his finding at step 4 that Tutt could not perform her past relevant work.

**1. The ALJ Properly Considered the Opinion of Meagan Houston, Ph.D.**

Meagan Houston, Ph.D., performed a psychological consultative examination of Tutt on October 2, 2014. Tutt argues that the ALJ erred by not reconciling the differences between Houston's opinion and the opinions of the state agency reviewers. Tutt also argues that had the ALJ credited Houston's opinion that Tutt had marked impairment in social and occupational functioning, he would have found her disabled.

The ALJ summarized Houston's findings and assessed the weight he gave her opinion as follows:

> Appearance was normal and there were no abnormal perceptions or memory problems. The claimant reported the medications were effective in managing her symptoms. Thought process and content were normal. Mood was dysphoric and affect congruent. She was fully oriented. Judgment and insight were good. Dr. Houston diagnosed the claimant with adjustment disorder with depressed mood, concluded she has a fair prognosis, and stated her symptoms may cause marked

6

> impairment in her social and occupational functioning, and her inability to seek or maintain employment appears more related to her physical health condition than her mental health condition. Little weight is given to Dr. Houston's assessment because it is inconsistent with the medical evidence of record, as well as her own examination.

Dkt. 4-3 at 25. The ALJ also considered the opinions of state agency reviewing physicians who opined that Tutt could perform work at the medium exertional level, and could understand, remember, and carry out detailed, but not complex instructions, and respond appropriately to changes in the routine work setting. The ALJ gave little weight to their opinions regarding Tutt's physical limitations because they were inconsistent with the record as a whole and newer medical evidence showed additional limitations. Dkt. 4-3 at 27. The ALJ afforded great weight to the mental RFC evaluations by Matthew Snapp, Ph.D. and Janet Ritch, Ph.D., who opined that Tutt could understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in the routine work setting. *Id.* The ALJ incorporated the limitation that Tutt could understand, remember, and carry out detailed, but not complex instructions into his RFC determination.

Because Houston is a non-treating medical source, the ALJ was not obligated to give Houston's opinion any particular weight or to expressly set forth in detail the reasons for his decision. The six-factor analysis of 20 C.F.R. 404.1527(c)(2) applies only to consideration of a treating source opinion.[3] The ALJ also was not obligated to "reconcile" Houston's opinion with those of the state agency reviewers. *See* Social Security Ruling (SSR) 96-6p, 1996 WL 374180 at *2 (S.S.A. 1996) (The ALJ is required only to consider and evaluate the opinions of state agency

---

[3] Tutt argues that the ALJ failed to follow the factors of "C.F.R. § 404.1512(e)(2)(1)." Neither the court nor the Commissioner could locate that regulation. *See* Dkt. 12 at 3.

7

medical and psychological consultants and other program physicians and psychologists when making a decision in a particular case).

It is well-established that the ALJ is entitled to determine the credibility of examining physicians and other medical experts and to weigh their opinions. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). "In evaluating the opinion of a non-treating physician, an ALJ is free to incorporate only those limitations that he finds 'consistent with the weight of the evidence as a whole.'" *Thompson v. Colvin*, No. 4:16-CV-00553, 2017 WL 1278673, at *12 (S.D. Tex. Feb. 14, 2017) (citing *Andrews v. Astrue,* 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013)). Having found Houston's opinion inconsistent with the medical evidence as a whole and with her own examination findings, the ALJ did not err in giving the opinion little weight.

**2. The ALJ's RFC Determination is Supported by Substantial Evidence.**

As noted above, the ALJ gave "little weight" to state agency medical opinions finding Tutt was able to perform work at the medium exertion level. Dkt. 4-3 at 27. Tutt contends that because there were no other medical source opinions regarding Tutt's physical impairments, the ALJ erred in basing the RFC on his own unsupported opinion. Tutt's contention is without merit.

It is well-established that "the ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However, the absence of a medical source statement describing the types of work a claimant is capable of performing does not necessarily make the record incomplete. *Id.* In this case, there was extensive medical evidence regarding Tutt's physical condition and the ALJ performed a thorough analysis of those records. *See* Dkt. 4-3 at 21-28. The ALJ also considered the medical expert opinions from state agency reviewers, although he concluded that the medical evidence and hearing testimony supported a greater degree of physical limitation than that recognized by

the state agency reviewers. *Id.* at 27. As the ALJ noted, "newer medical evidence shows additional limitations." *Id.* The ALJ did not err in making the RFC determination. The RFC determination is not a medical opinion and the ALJ retains sole responsibility for determining a claimant's RFC. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

### 3. The ALJ's Step 5 Determination is Supported by Substantial Evidence.

Tutt contends that the ALJ's decision at step 5 of the sequential analysis is not supported by substantial evidence because it conflicts with his decision at step 4 that she could not perform her past relevant work as a retail sales clerk. She further contends that the ALJ erred in applying Grid Rule 202.21 to find that she is not disabled.

Contrary to Tutt's contention, the ALJ's disability determination was not based solely on Grid Rule 202.21, which governs disability determinations for individuals who can perform the full range of light, unskilled work. The ALJ noted that application of Grid Rue 202.21 would dictate a finding of "not disabled." Dkt. 4-3 at 29. However, because Tutt has non-exertional limitations, the ALJ properly used the services of a vocational expert to make the step 5 determination. *Id.*; *See Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) ("When, as here, the claimant suffers from additional limitations that make the Medical–Vocational Guidelines inapplicable, the Commissioner must rely upon the services of a vocational expert or similar evidence. . . . The value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." (internal citations omitted)).

The ALJ incorporated all of the limitations he found supported by the evidence into his RFC assessment. At the hearing, the ALJ presented a series of hypothetical questions to the vocational expert, Byron Pettingill, which incorporated all of the limitations contained in his

9

RFC assessment. Dkt. 4-3 at 90-96. An ALJ's hypothetical question to a vocational expert must reasonably incorporate all limitations recognized by the ALJ, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). These conditions were met in this case.

The ALJ's ultimate finding that Tutt is not disabled under the Act is based on the Pettingill's identification of jobs a person matching Tutt's RFC can perform. Pettingill classified Tutt's past work as a retail sales clerk as light, *semiskilled* work. Dkt. 4-3 at 28, 91. Tutt's argument that the ALJ's step 4 and step 5 findings are in conflict overlooks the fact that the ALJ found that Tutt could perform *unskilled* light work. In addition, the ALJ expressly asked the vocational expert if Tutt could perform her past work as a retail sales clerk if she were limited to frequent interaction with the public or coworkers. *Id.* at 95. Pettingill testified she could not, but that there other jobs available she could do with that limitation, such an office helper, clothing sorter, and small products assembler. *Id.* at 95-96. All of the jobs the vocational expert identified were light, unskilled jobs. *Id.* at 96. Thus, the ALJ's step 4 decision that Tutt could not perform her past relevant work is not inconsistent with his step 5 decision that she could perform other available jobs. The ALJ did not err in finding that Tutt was not disabled within the meaning of the Social Security Act.

### III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on a reversible error of law. Thus, Tutt's motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed on August 22, 2018, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge